NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0774n.06

No. 11-1791

**FILED**

*Jul 18, 2012*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

LEONARD GREEN, Clerk

TYSON EDWARD ARMY,

    Plaintiff-Appellant,

v.

DALE COLLINS,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE: SUTTON and GRIFFIN, Circuit Judges; DOWD, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiff Tyson Edward Army was tried twice in state court for the murder of Demon Richards. Both trials ended with the court declaring a mistrial. Rather than try Army a third time, the prosecutor dismissed the charges. This lawsuit followed. Army asserts claims under state and federal law against Dale Collins, the police detective who investigated Richards's murder. The district court entered summary judgment in Collins's favor. We affirm.

I.

On the evening of October 16, 2005, two Detroit police officers arrived at the scene of a car accident, where a 1989 Chevrolet Caprice had struck a Chevy custom conversion van. The Caprice was on fire, its driver, Demon Richards, slumped over the steering wheel. Richards had been shot

---

[*]The Honorable David D. Dowd, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

once in the head, and a handgun was found on the floor of the Caprice's driver's side compartment. Officers suspected Richards had been murdered.

Defendant Dale Collins was tasked with investigating the homicide. His efforts led him to believe that Army was in the Caprice that night and complicit in Richards's murder. Following his investigation, Collins prepared a detailed report of his investigation and forwarded it to the prosecutor's office for decision on whether to charge Army for Richards's murder.

Collins's report contained the statements of three individuals who heard the car crash and gave descriptions of the men they saw flee from the scene. The report also included a statement from Richards's mother, Michelle Frost. Frost said she spoke with her son on the phone shortly before his death. During that short telephone conversation, Richards told her he was "with Dollar," just before the call dropped. Army was known to some as "Dollar." Frost tried to call Richards back, but her call went to voice mail.

Also included in Collins's report was a statement from Richards's friend, William Bryant, who spoke with Richards around 9:00 p.m. the night he was murdered. Richards apparently told Bryant, too, that he was "with Dollar," and that they were "trying to take care of some business." Bryant was aware that Army had accused Richards of recently robbing him.[1] Collins's report also contained a statement from Kimberly Forbes, Richards's girlfriend at the time, who told police that Richards had confided in her that he and Army were engaged in check and credit-card fraud together.

---

[1]Approximately one month before Richards's murder, two unknown men assaulted and robbed Army in his home.

Richards also apparently told Forbes that Army had accused Richards of assaulting and robbing him weeks earlier. A friend of Forbes also told her that Army had killed Richards as payback for the assault and robbery. Finally, Collins's report indicated that Allynn McDade, one of the three eyewitnesses to the car crash, picked Army out of a live lineup a month later. Army was the man she saw jump from the Caprice's passenger seat and flee the scene.

Army was arrested and charged with first-degree murder and related gun offenses. He was arraigned and bound over for trial after a preliminary examination, pled not guilty, and went to trial. After two mistrials due to jury deadlock, the prosecutor dismissed the charges without prejudice. Army then filed this lawsuit. He originally asserted numerous state and federal claims against defendant Collins and the City of Detroit. The issues were narrowed considerably, however, when Army agreed to dismiss all of his claims against the City of Detroit and several of his state-law claims against Collins. After a hearing, the district court entered summary judgment in Collins's favor on the remaining claims, finding that some were time-barred and that Army had failed to establish any triable issues with respect to the others. This timely appeal followed.

## II.

We review a district court's grant of summary judgment de novo. *Longaberger Co. v. Kolt*, 586 F.3d 459, 465 (6th Cir. 2009). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When determining whether the movant has met this burden, we view the evidence in the light most

favorable to the nonmoving party. *Smith Wholesale Co. v. R.J. Reynolds Tobacco Co.*, 477 F.3d 854, 861 (6th Cir. 2007). However, the nonmoving party must present more than a "mere . . . scintilla" of evidence to withstand a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). The question is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52.

III.

On appeal, Army challenges only the district court's entry of summary judgment on his claims under § 1983 for malicious prosecution and failure to disclose evidence. We therefore limit our review to those two claims. *See Music v. Arrowood Indem. Co.*, 632 F.3d 284, 286 n.1 (6th Cir. 2011) (noting that issues not presented in an initial brief on appeal are abandoned).

A.

Army contends that Collins violated his rights under the Fourth and Fourteenth Amendments by providing false information to the prosecutor, which led to Army's prosecution. This court "recognizes a separate constitutionally cognizable claim of malicious prosecution under the Fourth Amendment, which encompasses wrongful investigation, prosecution, conviction, and incarceration." *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (citation, internal quotation marks, and alteration omitted). Such claims generally lie only against law-enforcement officers responsible for investigating the alleged crimes, as prosecutors are absolutely immune from § 1983 suits for damages arising from their prosecutorial decisions. *See Imbler v. Pachtman*, 424 U.S. 409,

427–28 (1976). To succeed, a plaintiff must demonstrate, *inter alia*, that probable cause for the prosecution did not exist and that the police investigator "made, influenced, or participated in the decision to prosecute." *Sykes*, 625 F.3d at 308 (citations, internal quotation marks, and alterations omitted); *see also Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007).

Army does not contend that the information in Collins's report, upon which the prosecutor relied in bringing charges, does not establish probable cause. Indeed, he is barred from doing so in light of the state court's determination during a preliminary examination that there was probable cause for his prosecution. *See Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007). Rather, Army argues that Collins intentionally included in his report false statements or material omissions that were critical to the probable-cause determination. Such a showing can establish both that there was not probable cause for the prosecution and, possibly, that Collins influenced the prosecutor's decision to charge Army. *See Sykes*, 625 F.3d at 311, 317.

Army has identified statements from two individuals—Michelle Frost and William Bryant—that he maintains Collins should not have included in his report because they are false.[2] We address each statement in turn.

First is the statement regarding Michelle Frost's phone conversation with Richards:

---

[2]Army also identifies two omissions—that the lineup was unduly suggestive and that Collins pressured McDade to make her identification—that he contends Collins should have included in his report. But because he did not argue these omissions below, ("Plaintiff argues *only* that Collins's application for the arrest warrant contained 'the false statements that Michelle Frost received a call from her son.'" (citing Army's response brief) (emphasis added)), we do not address them. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008).

> Michelle Frost will testify that . . . she received a phone call from her [son] at about 9:05 PM, the complainant said . . . he was with Dollar and the phone cut off. She tried to call him back but the call went to voice mail.

According to Army, there was no such phone call. Records from Frost's cell phone and May Russell's cell phone, which Richards apparently was using at the time, show two outgoing calls from Russell's phone at 9:05 p.m. and one from Frost's a minute later. Yet neither record indicates any corresponding *incoming* calls, from which Army infers that the calls never connected and Frost did not speak with her son before he was killed. He infers further that Collins intentionally lied when he included Frost's statement in his report because he knew the phone records did not substantiate her statement.

A reasonable jury could not agree with Army. Collins stated in his report only that Frost would testify that she spoke with her son, who told her he was "with Dollar," i.e., with Army. Army has not shown that this statement is false. He has not offered, for example, an affidavit or deposition testimony from Frost stating that her son did not call her that night or, if he did, that she never told Collins about the conversation. Moreover, there is no evidence that Collins recognized the incoming/outgoing call discrepancy in the phone records before he filed his report. So even if a jury could find the statement false, it could not conclude that including it was intentional.[3] As the district court recognized, "such inconsistencies are incident to any ongoing criminal investigation conducted

---

[3]During the hearing on the motion, Army's counsel represented to the district court that Collins admitted in discovery that he had Frost's and Russell's phone records before he submitted his report to the prosecutor. However, there is no further admission that Collins recognized the discrepancy in the records.

by human beings." The absence of any evidence that Collins recognized the discrepancy before filing his report is unsurprising given the magnitude of the discrepancy.

The second statement Army contends was false concerns that of William Bryant:[4]

William Bryant, aka Jay, will testify that on 10-16-05, he received a call from Demon Richards who told him that he would meet him at the club, that he was with his boy Dollar trying to take care of some business. The call was around 9:00 PM.

Army's claim here is similar to the one he makes regarding Frost's statement. He contends that "a review of [May Russell's] phone records does not show any outgoing calls from [Russell's] phone other than the two calls placed at 9:05 pm to Michelle Frost." The only other recorded outgoing calls from Russell's phone around 9:00 p.m. are at 8:35, 8:37, and 8:38. The owners of these phone numbers are unknown, and we will assume Army is correct that none is associated with Bryant. Even if we further assume that Collins was prohibited from including Bryant's statement in the warrant in light of the absence of a record of the call—a question we need not answer—Army's claim still fails, as probable cause for the prosecution still existed even without the statement. *See Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001) ("[I]f this court finds that there was probable cause to prosecute [the plaintiff], regardless of any alleged false statements made by [the investigating officer], then [the plaintiff] cannot make out a malicious prosecution claim under the Fourth Amendment."); *see also Offineer v. Kelly*, 454 F. App'x 407, 416 (6th Cir. 2011). Bryant's

---

[4]As far as we can tell from the record, Army offered this statement for the first time during the district court's hearing on Collins's motion. That is sufficient to preserve the argument for appeal. *See United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009).

statement that Richards said he was "with Dollar" around 9:00 p.m. is entirely cumulative of Frost's statement.

Army has failed to establish a genuine issue of material fact on an essential element of his claim for malicious prosecution. Collins is therefore entitled to summary judgment.

B.

Next, Army claims that Collins failed to make constitutionally required disclosures to the prosecutor. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Although *Brady* imposes an absolute duty of disclosure only *on prosecutors*, we have held that "the due process guarantees recognized in *Brady* also impose an analogous or derivative obligation on the police" to disclose evidence whose "exculpatory value" is "apparent" to officers. *Maldowan v. City of Warren*, 578 F.3d 351, 381, 388 (6th Cir. 2009). That duty is discharged once an officer delivers such evidence to the prosecutor's office. *Id.* at 381.

Army identifies in his opening brief only one piece of evidence that he contends Collins was required to deliver to the prosecutor's office, but did not: Michelle Frost's phone records.[5] Initially, we question whether Collins's derivative *Brady* duty extended to Frost's records, for a prosecutor's

---

[5]Army's discussion in his brief regarding the lineup identification relates only to his claim of malicious prosecution. Although the district court addressed the lineup when addressing Army's *Maldowan* claim, Army has abandoned that specific claim by not raising it in his opening brief. *See Music*, 632 F.3d at 286 n.1. We therefore do not address it.

duty under *Brady* "does not apply to information that is not wholly within the control of the prosecution." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998); *see id.* ("There is no *Brady* violation where a defendant knew or should have known the essential facts permitting him to take advantage of any exculpatory information, or where the evidence is available from another source, because in such cases there is really nothing for the government to disclose." (citations, internal quotation marks, and ellipsis omitted)). This *Brady* trigger would appear to apply with equal force to *Maldowan*-type claims against a police investigator. Nothing seems to have prevented Army from himself subpoenaing Frost's phone records from her service provider.

Army's claim fails for another reason as well: he has offered no evidence from which a jury could conclude that Collins failed to deliver Frost's phone records to the prosecutor. For reasons that are unclear to us, Army deposed neither Collins nor the prosecutor during discovery in this action. Army can therefore point to no direct evidence that proves Collins's alleged failure in this regard. He attempts instead to establish a genuine dispute as to this material fact through deduction: the prosecutor made all of his constitutionally required disclosures; those disclosures did not include Frost's records; therefore, Collins must not have delivered Frost's records to the prosecutor (else Army would have received them in the prosecutor's disclosures). But there are problems with this argument. The most obvious one concerns its first premise—it is entirely possible that *the prosecutor* failed to satisfy his obligations under *Brady*. Army offers no evidence to show otherwise. Because it is just as likely that the prosecutor failed in his obligations as it is that Collins failed in his, Army is unable to prove by a preponderance of the evidence that the failure lies with Collins.

*See Liberty Lobby*, 477 U.S. at 252 ("The judge's inquiry [on summary judgment in a run-of-the-mill civil case] unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." (citations, quotation marks, and brackets omitted)).

Even more to the point, there *is* evidence that Collins delivered Frost's phone records to the prosecutor before trial. Collins testified during one of Army's two trials that both he *and the prosecutor* had Frost's phone records. When Army then asked the prosecutor to examine them, the prosecutor acknowledged their existence, stating that he had to find them in his file first. The court ordered the prosecutor to locate and produce the records during a recess, which the prosecutor later did. This shows that Collins gave the records to the prosecutor and thereby satisfied his constitutional duty. While the reason Army was without the records before trial remains a mystery, it plainly had nothing to do with Collins. A jury could not find otherwise.

## IV.

For these reasons, we affirm the judgment of the district court.