**NOT RECOMMENDED FOR PUBLICATION**
File Name: 17a0082n.06

**No. 16-1219**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 30, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| EDWARD GEORGE CARTER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| CITY OF DETROIT; SUSAN SIEMASZKO; | ) | DISTRICT OF MICHIGAN |
| WILLIAM VITORAKOS; STEVEN DEST; | ) | |
| RUSSELL MORGAN; and DONNA LALLY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

**BEFORE: GIBBONS, SUTTON, and WHITE, Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** In 1975, Edward Carter was sentenced to life in prison for armed robbery, sodomy, and assault with intent to commit gross indecency. Thirty-five years later, he was exonerated after fingerprint and palm-print evidence from the crime scene were retested and found to incriminate another individual with a history of convictions for similar crimes. Although these prints were originally tested against Carter's prints in 1974 with negative results, this information was allegedly never disclosed to Carter's counsel. Carter now claims that this violated his constitutional rights under *Brady v. Maryland*, 373 U.S. 83 (1963). Based on this allegedly suppressed evidence, Carter sued the City of Detroit and several former members of the Detroit Police Department under 42 U.S.C. § 1983 asserting violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights. The district court

granted summary judgment for defendants on all claims. For the reasons set forth below, we affirm.

I.

On October 24, 1974, a pregnant female student at Wayne State University was attacked by a male assailant after entering a restroom on campus. The assailant was hiding behind the restroom door when the victim entered. Armed with a kitchen knife, the assailant forced the victim into the handicapped stall where he ordered her to face the wall and hold onto the handicap-assist handrails while he pulled down her pants. The assailant first orally abused the victim's rectum and forcibly sodomized her. He then forced the victim to turn around and perform oral sex on him, after which he stole the victim's watch and fled the restroom.

After the victim reported the assault, officers were dispatched to the scene. As part of their investigation, officers dusted the handicap stall for latent fingerprints and palm prints. They were able to obtain several useable fingerprints from the waist-level handrail in the stall, and a single palm print from a foot-level rail in the stall. With respect to the palm print, the laboratory technician assigned to the case noted in his report that it appeared the print "could have only been left [by someone] lifting him or herself from the floor." DE 43-4, Page ID 241. The entire handrail assembly was removed from the stall and transported to the police station for further processing.

In the week following the assault, Officers William Vitoratos and Susan Siemaszko interviewed the victim, but the record is unclear as to the contents of this interview. During the investigation, two other witnesses told police they had seen Edward Carter on the day of the attack in the building where the attack occurred. Carter was then contacted by Officer Steven Dest and instructed to come to the police station for a lineup. At the lineup, the victim identified

2

Carter as her attacker. Carter was subsequently arrested and charged with armed robbery, sodomy, and assault with intent to commit gross indecency.

On November 6, 1974, Officer Russell Morgan analyzed the latent fingerprints from the handrail and concluded that they did not match Carter's. On November 11, Morgan tested the palm prints found on the foot-level railing, but the results of this test are unclear. On November 9, Dest interviewed Carter, who denied that he was the assailant and insisted that he was not present on Wayne State's campus on the day of the attack. In his deposition taken in this case, Carter claimed that he was in the Wayne County jail on a malicious destruction of stolen property charge on the day the attack occurred. There is no evidence about whether Carter disclosed this information to Dest during his 1974 interview.

Carter received a bench trial on January 3, 1975. At trial, neither Carter nor his lawyer presented evidence that he was in the Wayne County jail on the day of the attack.[1] The victim, however, testified at trial, identifying Carter as her attacker while on the stand. Although it is unclear what other evidence was presented at trial, Carter claimed in his deposition that no fingerprint evidence was introduced. Carter was convicted on all counts and sentenced to life in prison plus seventeen-and-a-half to twenty-two-and-a-half years. On appeal, the Michigan Court of Appeals affirmed. Carter's initial attempts at post-conviction relief were unsuccessful.

In 2004, Carter obtained the assistance of the Thomas M. Cooley Law School Innocence Clinic. The Clinic contacted the Detroit Police Department and requested retesting of the latent fingerprints found on the handrail. The police again found that the fingerprints did not match Carter's, although the palm print found on the foot-level railing was unable to be retested. Then, using technology not available in 1974, the police were able to compare the latent prints to those in its existing database and match them with those of Willis Taylor III, a serial sexual predator

---

[1] Carter claims that he informed his lawyer of this alibi but that it was never presented to the judge during trial.

who had been arrested for similar sexual assaults between 1974 and 1978. Based on this newly discovered evidence, Carter's conviction was vacated. He was released from prison on April 14, 2010, after thirty-five years of incarceration.

On December 5, 2011, Carter filed suit under 42 U.S.C. § 1983 against the City of Detroit and several now-retired members of the Detroit Police Department ("the individual officers"), alleging violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights.[2] Carter claimed that the individual officers' failure to disclose the fingerprint and palm-print evidence in 1974 violated his due-process rights under *Brady v. Maryland*, 373 U.S. 83 (1963). Carter also claimed that the City of Detroit was liable under § 1983 because it acted with deliberate indifference by failing to train its officers with respect to disclosing exculpatory evidence under *Brady*.

The district court granted defendants' motion for summary judgment on all counts. The district court found that Carter's *Brady* claims against the individual officers lacked merit because Carter had shown neither that the fingerprint and palm-print evidence were "exculpatory" nor that any of the individual officers had actually failed to disclose such evidence to the prosecutor. The district court further held that because Carter had not shown an underlying constitutional violation, the City of Detroit could not be held liable as a municipality under § 1983. Carter timely appealed.

II.

This court reviews a district court's grant of summary judgment *de novo*. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 644 (6th Cir. 2015) (citing *Griffin v. Finkbeiner*, 689 F.3d 584, 592 (6th Cir. 2012)). The movant is entitled to summary judgment as a matter of law where the pleadings, affidavits, and other discoverable evidence show no genuine issue of

---

[2] Carter also brought claims under 42 U.S.C. § 1985, but does not challenge the dismissal of those claims on appeal.

material fact. *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 557 (6th Cir. 2009) (citing Fed. R. Civ. P. 56(c)). Only material factual disputes, which are determined by the substantive law governing the issue, will be sufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). This court construes all facts and inferences in favor of the non-movant to determine if there exists "sufficient evidence for a trier of fact to find for that party." *Wheat v. Fifth Third Bank*, 785 F.3d 230, 237 (6th Cir. 2015).

III.

"[T]he suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87. This duty is not limited to prosecutors; police officers share an analogous duty to disclose such evidence to the prosecutor's office. *Moldowan v. City of Warren*, 578 F.3d 351, 381 (6th Cir. 2009). To establish a *Brady* violation, Carter bears the burden of proving: (1) the evidence at issue was favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) a state official suppressed the evidence, either willfully or inadvertently; and (3) the suppressed evidence was material such that prejudice ensued from its nondisclosure. *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000). Because Carter has failed to establish that the individual officers actually suppressed the fingerprint and palm-print evidence, we must affirm the grant of summary judgment in their favor on Carter's *Brady* claim.

Unlike prosecutors, who must disclose exculpatory evidence directly to the defense, *see Brady*, 373 U.S. at 87, police officers "fulfill their *Brady* obligations as long as they inform the prosecutor about evidence that undermine[s] the state's preferred theory of the crime." *D'Ambrosio v. Marino*, 747 F.3d 378, 389 (6th Cir. 2014) (internal quotation marks and citation

omitted). Carter has not satisfied his burden of showing that the individual officers failed to disclose the fingerprint and palm-print evidence here. *See Carter*, 218 F.3d at 601. Carter has not deposed either the individual officers or the prosecutor involved in his criminal trial. He has thus produced no direct evidence that the individual officers actually failed to disclose the fingerprint or palm-print evidence to the prosecutor's office during their investigation. Instead, Carter attempts to create a genuine dispute of material fact by relying on his own deposition testimony that the prosecutor did not introduce the fingerprint and palm-print evidence at his criminal trial. But this does not establish that the officers failed to disclose such evidence to the prosecutor. It establishes only that the prosecutor chose not to use the evidence at trial. It is just as likely, therefore, that the *prosecutor* failed to satisfy his *Brady* obligations as it is that the individual officers failed to satisfy theirs, and Carter has produced no evidence indicating otherwise. *See Army v. Collins*, 488 F. App'x 957, 962 (6th Cir. 2012). As such, a reasonable jury could not find by a preponderance of the evidence that the individual officers actually suppressed the fingerprint and palm-print evidence in violation of *Brady*, and thus summary judgment was proper on this claim.[3] *See id.* (citing *Liberty Lobby*, 477 U.S. at 252).

IV.

Carter also alleges that the City of Detroit is liable under § 1983 for failing to adequately train its police officers regarding their *Brady* obligations. A plaintiff suing a municipality under § 1983 must prove that the municipality's policy or custom caused his alleged constitutional injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–92 (1978). One way a plaintiff may prove an unlawful policy or custom is by showing that the municipality inadequately trained or supervised its employees. *City of Canton v. Harris*, 489 U.S. 378, 387–88 (1989). To prevail on

---

[3] Because Carter failed to establish that the fingerprint and palm-print evidence were suppressed by the individual officers, we need not reach the other elements of Carter's *Brady* claim.

6

a failure-to-train claim, a plaintiff must prove: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (citation omitted). In the failure-to-train context, deliberate indifference has been recognized in two situations. One exists where the municipality fails to "provide adequate training in light of foreseeable consequences that could result from the lack of instruction." *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). The second situation arises where "the city fails to act in response to repeated complaints of constitutional violations by its officers." *Id.*

Carter's failure to establish a constitutional violation by the individual officers vitiates his § 1983 claim against the City of Detroit. *See Clearly v. Cty. of Macomb*, 409 F. App'x 890, 906 (6th Cir. 2011) ("Where . . . there is no constitutional violation, there can be no municipal liability."). The City of Detroit was therefore entitled to summary judgment on this claim.

V.

For the reasons stated above, we affirm the district court's grant of summary judgment for defendants on all counts.