NOT RECOMMENDED FOR PUBLICATION

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Jun 13, 2018

DEBORAH S. HUNT, Clerk

EDWARD BRENT WILLIAMS; THERESA M. WILLIAMS,

    Plaintiffs-Appellants,

v.

DONALD SCHISMENOS, Badge No. 950, Individually and in his official capacity; JESSIE LEESER, Badge No. 1030, Individually and in his official capacity; CITY OF AKRON, OHIO,

    Defendants-Appellees.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO

BEFORE:    KEITH, ROGERS, and KETHLEDGE

ROGERS, Circuit Judge.  Fifteen years after he was convicted of resisting arrest and assaulting a police officer, Edward Williams learned that there was a video recording of the traffic stop underlying his conviction.  One of the officers who arrested Williams had installed a personal video camera on his squad car's dashboard, but Williams's defense attorney never received a copy of the video during Williams's trial.  Believing that the newly discovered video proved his innocence, Williams sued the officers who arrested him and the City of Akron under 42 U.S.C. § 1983 and state-law, based on the officers' use of force against him and the ensuing prosecution. The district court granted summary judgment to the defendants on all claims.  The court held that several of Williams's claims were time-barred, and Williams's claims that were not time-barred also failed because the video clearly shows that Williams was uncooperative.  On appeal, Williams argues that the district court improperly dismissed his claims against the arresting officers (1) for

a *Brady* violation, (2) for malicious prosecution, and (3) for state-law tort liability. Williams explicitly waived his claims for excessive force and false arrest. Williams also abandoned his claims against the City of Akron because he did not raise those claims in his opening brief on appeal. *See United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006).

The district court properly granted summary judgment in favor of the officers. Officers have a "'*Brady*-derived' responsibility to turn over exculpatory evidence to *the prosecutor's office*," *Moldowan v. City of Warren,* 578 F.3d 351, 381 (6th Cir. 2009) (emphasis added), but Williams has failed to produce evidence from which a reasonable juror could conclude that the officers withheld the video from the prosecutor. Williams's malicious prosecution claim fails because he has not offered sufficient evidence to overcome the presumption of probable cause created by a grand jury indictment. Finally, the officers are entitled to state-law immunity from Williams's state-law claims under Ohio Rev. Code § 2744.03.

The record includes the dash-cam video of Williams's arrest. While the parties present their own, often conflicting, stories about the traffic stop and subsequent arrest, the following description of the encounter is based on our review of the video recording and filled in by the record, as taken in Williams's favor by the district court. *See Scott v. Harris*, 550 U.S. 372, 380–81 (2007); *Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015).

On the evening of October 2, 1996, Williams received a call from his wife, Theresa, that the couple's infant son, Edmund, was having trouble breathing. A nurse who had seen Edmund earlier that day told Theresa to take the child to the hospital if his condition worsened. Williams agreed to take Theresa and Edmund to the hospital, but he did not have his driver's license with him, the tags on the vehicle he was driving had expired, and the light above his license plate was not working.

Officers Jessie Leeser and Donald Schismenos observed Williams's car that evening while they were patrolling downtown Akron, Ohio. The pair noticed that Williams's license plate light was not functioning, and the license plate appeared to be expired. The officers beeped the squad car's sirens and flashed its lights, indicating to Williams to pull over, which he did.

The officers exited the squad car and approached Williams's car. Leeser approached the driver's side and began speaking with Williams. Meanwhile, Schismenos approached the passenger's side and instructed Williams to "turn off the car, sir." Schismenos asked Theresa for her driver's license, and she explained that Edmund was having breathing issues because of his asthma. Theresa told Schismenos that she and Williams were trying to take Edmund to Akron Children's Hospital. Leeser then explained to Williams that the officers had stopped him because the license plate on the car was expired. Williams informed Leeser that he did not have his driver's license on him, which Leeser explained was an "arrestable offense."

While Leeser spoke to Williams, Schismenos talked to Theresa about Edmund's condition. Theresa explained that Edmund was having trouble breathing, and Schismenos agreed to call Emergency Medical Services to check on the child, although he commented that Edmund did "not appear to have any problems." Leeser continued to question Williams, who, by his own admission, was not attentive to Leeser's questioning. Finally, Leeser asked, "where do you live at?" When Williams delayed responding Leeser complained, suggesting out loud that Williams was "being totally uncooperative." Schismenos then advised Leeser to have Williams get out of the car.

Leeser opened the driver's door and asked Williams to step out of the car. But Williams instead reached out from inside the car and slammed the door shut. Schismenos circled around to the driver's side of the car, while Leeser told Williams, "I'm not going to ask again, get out of the car." Schismenos opened the driver's door again and warned that if Williams didn't step out of

the car the officers would spray him with mace. Williams asked, "What's the reason? What's the problem, man?" The officers again instructed Williams to get out of the car, and when he exited, they instructed him to "turn around, face the car, [and] put your hands" on the roof of the car.

Williams put his left hand on the car's roof, while turning to ask the officers what was going on, but he did not place his right hand on top of the car. The officers again instructed Williams to place his hands on the top of the car, but he failed to do so. Leeser and Schismenos then attempted to put Williams's hands behind his back, but Williams told the officers, "go ahead, hit my ass—spray me [with mace]." As Leeser and Schismenos attempted to put Williams's hands behind his back, one of the officers instructed the other to "spray him (Williams)." Williams resisted the officers' attempts to restrain him, yelling "Spray me for what? I ain't done nothing" and explaining that his son was in the car. Williams and the officers began tussling, and one of the officers instructed Williams to get on the ground. Williams continued to struggle, and Leeser eventually implemented a chokehold, while Schismenos grabbed Williams's left arm. Williams began yelling, "why are y'all doing this, man?" Eventually, the officers wrestled Williams to the ground—mostly out of the camera's view.

Williams, Schismenos, and Leeser struggled on the ground—out of the camera's view— for approximately twenty-five seconds. Then Williams stood up, Schismenos and Leeser still struggling to subdue him. The officers pinned Williams against his car, and Schismenos applied a chokehold, while Leeser delivered blows to Williams's abdomen (four punches) and head (two punches). Still unable to subdue Williams, Leeser began delivering strikes using his baton, aiming for Williams's lower body, and Williams stuck out his leg to defend against Leeser's baton strikes. In total, Leeser struck Williams approximately fifteen times with his baton. All the while, Leeser

and Schismenos continued to give verbal commands for Williams to "get on the ground." Williams responded, "I will, I will," but he remained standing.

Eventually, Williams went back to the ground, and the struggle continued off camera. The officers told Williams to get his hands behind his back several times, and while the trio struggled on the ground, back-up officers arrived at the scene. The back-up officers joined the skirmish, and after another minute of struggling with Williams off camera, the officers successfully cuffed him. Following the incident, Leeser and Schismenos signed a Use of Force Report detailing the encounter.

After Leeser and Schismenos arrested Williams, they charged him with failure to display a license, in violation of Ohio Rev. Code § 4507.35; assault, in violation of Ohio Rev. Code § 2903.13; resisting arrest, in violation of Ohio Rev. Code § 2921.33; obstructing official business, in violation of Ohio Rev. Code § 2921.31; and disorderly conduct, in violation of Ohio Rev. Code § 2917.11. Williams was also cited for a license plate violation, improper use of former plates, and display of a faulty tail light.

Six weeks later, the Summit County Grand Jury returned an indictment against Williams on one count of resisting arrest and one count of assault. Williams was convicted of both counts on April 28, 1997. Schismenos's dash-cam video was never introduced at Williams's trial, and it is unclear whether the prosecutor knew that the video existed. Williams was unaware of the video until 2013, when Theresa saw a news article that reported that Schismenos had secretly recorded his traffic stops and interactions with citizens while he worked for the Akron Police Department. After Williams learned of the video, he moved the state common pleas court for a new trial. In May 2015, the common pleas court dismissed the criminal case against Williams without prejudice.

Williams then filed the current action against Schismenos, Leeser, and the City of Akron in the Summit County Court of Common Pleas on October 19, 2015. Williams alleged that his rights under both the federal constitution and the Ohio constitution had been violated. Williams included several substantive claims under state and federal law: common law tort claims, excessive force, false imprisonment, malicious prosecution, and withholding of exculpatory evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), based on Schismenos's and Leeser's alleged failure to disclose the dash-cam video prior to Williams's 1996 trial. Defendant City of Akron removed the action to federal court.

After discovery, the defendants moved for summary judgment on all claims. On June 28, 2017, the district court granted summary judgment to the defendants. In rulings not challenged on appeal, the district court dismissed Williams's excessive force claim as time-barred, and dismissed Williams's claim for false arrest, "because the officers had probable cause to arrest him for failure to display a valid driver's license." The district court dismissed Williams's malicious prosecution claim because the grand jury's indictment created a presumption that there was probable cause to prosecute, and Williams failed to come forward with sufficient evidence to rebut the presumption. The district court dismissed Williams's *Brady* claim, holding that the video was not exculpatory because "it clearly demonstrated that [Williams] resisted arrest"; alternatively, the district court dismissed Williams's *Brady* claim because he failed to provide evidence from which a reasonable jury could find that the officers failed to disclose the video to the prosecutor. Finally, because the district court determined that Williams had not suffered a constitutional violation, it held that Akron was accordingly not subject to *Monell* liability, and the court held that the officers were entitled to state-law immunity from Williams's state-law claims.

On appeal, Williams claims that the district court erred in three respects. First, Williams argues that the district court erroneously held that the dash-cam video did not qualify as apparently exculpatory *Brady*-material, and therefore improperly dismissed his *Brady* claim. Second, Williams argues that the dash-cam video is sufficient evidence to rebut the presumption of probable cause afforded to prosecutions predicated on a grand jury indictment, and therefore the district court erred in dismissing his claim for malicious prosecution. Finally, Williams argues that the officers are not entitled to state-law immunity. However, none of Williams's claims is persuasive. We emphasize that Williams's excessive force claims are not before us, and we do not address whether the rough treatment by the police was unconstitutionally excessive force.

Williams first argues that the district court erroneously determined that the dash-cam video is not "apparently exculpatory" *Brady*-material. But the district court properly articulated an alternative, independent ground for dismissing Williams's *Brady* claim: Williams has not put forward evidence to establish that the officers withheld the dash-cam video from the prosecutor.[1] We have recognized that "the due process guarantees recognized in *Brady* also impose an analogous or derivative obligation on the police" to disclose evidence whose "exculpatory value" is "apparent" to officers, *Moldowan*, 578 F.3d at 381–83, and officers "fulfill their *Brady* obligations as long as they inform the prosecutor about evidence that undermine[s] the state's preferred theory of the crime," *D'Ambrosio v. Marino*, 747 F.3d 378, 389 (6th Cir. 2014) (internal quotation marks and citation omitted). Thus, to survive summary judgment on his *Brady* claim,

---

[1] Williams complains that the district court should not have considered this alternative ground because Leeser's and Schismenos's Motions for Summary Judgment challenged Williams's *Brady* claim only on the grounds that the video was not exculpatory. But "[a] district court may properly grant summary judgment on grounds not argued in the motion by the parties," particularly in cases like this one where it is clear from the record that a party cannot show a necessary element of his claim. *Hunley v. DuPont Auto.*, 341 F.3d 491, 501 (6th Cir. 2003); *see also Hines v. Joy Mfg. Co.*, 85 F.2d 1146, 1150 (6th Cir. 1988).

Williams must demonstrate that there is a material issue of fact whether Leeser and Schismenos withheld the dash-cam video from the prosecutor.

But Williams failed to depose Leeser, Schismenos, or the prosecutor during discovery, and in their answers to Williams's complaint, both Leeser and Schimenos denied Williams's claim that they did not disclose the existence of the video recording. The only evidence Williams points to suggesting that the officers withheld the video is his recollection that the prosecutor did not introduce the video at trial. In similar cases we have recognized that such evidence "does not establish that the officers failed to disclose evidence to the prosecutor. It establishes only that the prosecutor chose not to use the evidence at trial." *Carter v. City of Detroit*, 678 F. App'x 290, 294 (6th Cir. 2017). Thus, "it is just as likely . . . that the prosecutor failed in his *Brady* obligations as it is that the individual officers failed in theirs." *Id.* (emphasis removed). Accordingly, the district court properly dismissed Williams's *Brady* claim because a reasonable jury could not find by a preponderance of the evidence that Leeser and Schismenos actually suppressed the dash-cam video. *See id.*; *see also Army v. Collins*, 488 F. App'x 957, 962 (6th Cir. 2012).

Williams next argues that Leeser and Schismenos were not entitled to summary judgment on his malicious prosecution claim because there was no probable cause to believe he violated the law. But Williams was tried for resisting arrest and assault pursuant to an indictment by the Summit County Grand Jury, and "it has been long settled that the finding of an indictment, fair upon its face, by a properly constituted grand jury, conclusively determines the existence of probable cause for the purpose of holding the accused to answer." *Barnes v. Wright*, 449 F.3d 709, 716 (6th Cir. 2006) (internal quotation marks and citation omitted). Thus, the officers are entitled to a presumption that there was probable cause to prosecute Williams. *See Cook v. McPherson*, 273 F. App'x 421, 423–24 (6th Cir. 2008).

However, this presumption is rebuttable. *King v. Harwood*, 852 F.3d 568, 587–88 (6th Cir. 2017). Williams, however, cannot overcome the presumption here, because he cannot show that Leeser or Schismenos knowingly or recklessly made false material statements. Plaintiffs may overcome the presumption of probable cause created by a grand jury indictment where

> (1) a law-enforcement officer, in the course of setting a prosecution in motion, either knowingly or recklessly makes false statements (such as in affidavits or investigative reports) or falsifies or fabricates evidence; (2) the false statements and evidence, together with any concomitant misleading omissions, are material to the ultimate prosecution of the plaintiff; and (3) the false statements, evidence, and omissions do not consist solely of grand-jury testimony or preparation for that testimony (where preparation has a meaning broad enough to encompass conspiring to commit perjury before the grand jury).

*Id.* Here, Williams claims that the video of the encounter alone satisfies *King*'s test for rebutting the probable cause presumption and precludes summary judgment, but the video does not support the inference that the officers made knowingly or recklessly false statements. While Leeser's and Schismenos's reports of the encounter are not perfect play-by-plays of the what occurred, they are significantly corroborated by the video. Some portions of the encounter occur off-camera, are obscured, or simply are not definitive, but the video clearly shows Williams tussling with the officers and resisting their efforts to arrest him. Because Williams has presented no evidence to support his claim that Leeser and Schismenos knowingly or recklessly made false statements material to his prosecution, he cannot overcome the probable cause presumption created by a grand jury indictment, and his malicious prosecution claim fails.

Finally, Schismenos and Leeser are entitled to immunity from Williams's state-law claims. In Ohio, employees of political subdivisions are immune from tort liability, unless their acts and omissions are "manifestly outside the scope of the employee's employment or official responsibilities" or done "with malicious purpose, in bad faith, or in a wanton or reckless manner."

Ohio Rev. Code § 2744.03(A)(6)(a)–(b). Again, the only evidence Williams offers to support his claim that Leeser and Schismenos are not entitled to immunity is the dash-cam video. But the video footage, taking all reasonable inferences in the light most favorable to Williams, does not support the conclusion that Leeser or Schismenos acted outside the scope of their "employment or official responsibilities," or that they acted "with malicious purpose, in bad faith, or in a wanton or reckless manner." Thus, Williams cannot make the necessary showing to defeat immunity, and the district court properly granted Leeser's and Schismenos's motions for summary judgment on Williams's state-law claims.

The judgment of the district court is affirmed.